**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00119-HBB**

**LACOSTA SIKES**                                                        **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION[1]**                      **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

<u>BACKGROUND</u>

Before the Court is the complaint (DN 1) of Lacosta Sikes ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 17) and Defendant (DN 22) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and that judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 16).   By Order entered January 28, 2021 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

<u>FINDINGS OF FACT</u>

On June 8, 2017, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 11, 261-64, 265-74).   Plaintiff alleged that she became disabled on March 11, 2017, because of severe swelling in both feet, autoimmune condition, possible mini strokes, diabetes, and thyroid condition (Tr. 11, 288).   Her claims were denied initially on August 11, 2017, and upon reconsideration on December 8, 2017 (Tr. 11, 105-25, 126-82).   Plaintiff then filed a written request for an administrative hearing on December 18, 2017 (Tr. 11, 208-10).

On December 13, 2018, Administrative Law Judge David Peeples ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 11, 57, 59).   Plaintiff and her counsel, Sara Martin-Diaz, participated from Owensboro, Kentucky (<u>Id.</u>).   Kenneth Boaz, an impartial vocational expert, testified during the hearing (<u>Id.</u>).

In a decision dated April 9, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-31).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 11, 2017, the alleged onset date (Tr. 14).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: swelling in both feet, autoimmune condition, migraines, and obesity (<u>Id.</u>). [2]   The ALJ also determined that Plaintiff has the following "non-severe"

---

2 The ALJ noted that "the swelling in both feet had been variously described as inflammatory arthritis (Exhibit 50F/138) and [her] autoimmune condition had been variously described as systemic lupus erythematosus and connective tissue disorder (Exhibits 37F/3; 49F/102)" (Tr. 14).   While the ALJ "did not specifically name inflammatory arthritis, systemic lupus erythematosus, and connective tissue disorder as impairments, [he] considered the alleged signs and symptoms of the same as the alleged signs and symptoms of [the previously mentioned impairments] in the sequential evaluation process, consistent with SSR 96-8p" (<u>Id.</u>).   "In other words, the [ALJ] accounted for inflammatory arthritis, systemic lupus erythematosus, and connective tissue disorder in the sequential evaluation process" (Tr. 14-15).

impairments: diabetes, thyroid condition, hypertension, hyperlipidemia, gastroesophageal reflux disease, obstructive sleep apnea, degenerative disc disease, left carpal tunnel, left cubital syndrome, depression, and anxiety (Tr. 15-18).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she: can lift/carry 20 pounds occasionally and 10 pounds frequently; can stand/walk for four of eight hours; can sit for six of eight hours; can push/pull with the bilateral lower extremities frequently; can never crawl or climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and climb ramps and stairs; should avoid concentrated exposure to vibration and hazards (unprotected heights, moving mechanical parts); and would require use of an assistive device, such as a walker, for effective ambulation (Tr. 20).   The ALJ utilized Plaintiff's RFC, the RFC requirements of Plaintiff's past relevant work, and the testimony from the vocational expert to find that Plaintiff is unable to perform any past relevant work (Tr. 27).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 28-30).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 11, 2017, through the date of the decision (Tr. 30).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 259-60).   The Appeals Council denied Plaintiff's request for review (Tr. 1-6).

3

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

4

<u>The Commissioner's Sequential Evaluation Process</u>

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5)    Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 4

1.  Arguments of the Parties

Plaintiff claims that the ALJ and the Appeals Council failed to properly evaluate her Lupus diagnosis under Listing 14.02 and failed to state sufficient reasons for doing so (DN 17-1 PageID # 3609-11).   Plaintiff argues that the records and her testimony indicate the ALJ should have found her Lupus met Listing 14.02 on her onset date of March 11, 2017 (Id.).[3]   Plaintiff contends that the ALJ's "failure to do so is clear error and should result in a reversal, or in the least, a remand for a further determination on this issue" (Id. at PageID # 3611).   Next, Plaintiff submitted to the Appeals Council additional records from Norton Rheumatology Specialists that were received after the hearing, "but that referred to the time period in question" (Id. at PageID # 3609-10).   Plaintiff asserts that in spite of this new and material evidence, the Appeals Council chose to deny her "request to review the ALJ's decision, holding that there was not a 'reasonable probability that the evidence would change the outcome of the decision'" (Id. at PageID # 3610) (quoting Tr. 2).[4]

---

[3] Plaintiff contends that the medical evidence and her own testimony demonstrate she "clearly met" both the A and B requirements for Listing 14.02 on her onset date of March 11, 2017 (DN 17-1 PageID # 3609-11) (citing Tr. 84, 85, 89, 96, 1834-51, 2671-2831, 3122, 3160, 3435-36).   Yet Plaintiff concedes that she did not receive an official diagnosis of Systemic Lupus Erythematosus and begin treatment on Plaquenil, a medication to treat Lupus, until a week before the administrative hearing conducted on the December 13, 2018 (Id.).   Plaintiff downplays the impact this concession may have on her position by asserting that Lupus is a difficult disease to diagnose and her treating physician's records indicate he long suspected Lupus as a probable diagnosis (Id.) (citing Tr. 3122, 3160).

[4] Plaintiff asserts that these new medical records from Norton Rheumatology Specialists were material because they referred to the at time at issue (Id. citing Tr. 50-55).   Further, the records included a letter from her rheumatologist, Dr. Joglekar, indicating "[a] diagnosis of lupus was in question from 12/2017 to 7/2018" but by 9/2018, he was "confident in the diagnosis" of lupus and began to treat her accordingly (Id. PageID # 3611, citing Tr. 50).

Defendant asserts that the ALJ's decision included an extensive discussion of the medical evidence concerning Plaintiff's impairments and it indicates that the ALJ expressly considered the applicability of Listing 14.02 (DN 22 PageID # 3634) (citing Tr. 18-19).   Defendant points out that the ALJ explained that Plaintiff did not have a condition with involvement of two or more organs/body systems or at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) as required by Listing 14.02 (Id.) (citing Tr. 19 and 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.02(A)(1), (2)).   Further, Defendant points out that Plaintiff primarily relies on her own subjective complaints of fatigue and lupus fog, instead of the specific diagnostic findings and other objective indicia of severity relied on by the ALJ in finding that Plaintiff does not meet Listing 14.02 (Id. at PageID # 3636-37).

Defendant indicates that Plaintiff argues in an undeveloped manner that "new and material evidence" she submitted to the Appeals Council further bolsters her claim of significant limitations from Lupus (Id. at PageID # 3637-38).   Defendant explains that when, as here, the Appeals Council denies a request for review of the ALJ's decision, that decision becomes the final decision of the Commissioner subject to judicial review, and any evidence first submitted to the Appeals Council cannot provide a basis for finding the ALJ's decision is unsupported by substantial evidence (Id.).   Defendant asserts that the new evidence may only be considered for the limited purpose of determining whether a prejudgment remand is appropriate (Id.).   Defendant contends that Plaintiff cannot demonstrate the evidence is material because it merely shows that the diagnosis of Lupus, which had been in question from 2017 to 2018, was confirmed as of September 2018 (Id.).   Defendant points out that such evidence is not material because the ALJ's decision indicates he accepted this diagnosis (Tr. 14-15).

7

2.  Applicable Law

Plaintiff's challenge includes an argument that the ALJ should have found she met Listing 14.02 and "[h]is failure to do so is **clear error** and should result in a reversal, or in the least, a remand for a further determination on this issue" (DN 17-1 PageID # 3611) (emphasis added). But Plaintiff's argument relies on the wrong standard of review.[5]   Under the applicable standard of review, the Court is limited to determining whether the findings in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); <u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 374 (6th Cir. 2013); <u>Cole v. Astrue</u>, 661 F.3d 931, 937 (6th Cir. 2011)).

Additionally, in connection with her argument that the ALJ should have found she met Listing 14.02, Plaintiff refers the Court to documents from Norton Rheumatology Specialists that were not part of the record before the ALJ (DN 17-1 PageID # 3609-10) (citing Tr. 30-40, 50, 51-55).   The first document is a letter, dated March 14 2019, from Plaintiff's treating specialist, Dr. Ami Joglekar, indicating although a diagnosis of lupus was in question from December 2017 to July 20, 2018, he felt confident in the diagnosis by September 2018 and is treating Plaintiff accordingly (Tr. 50).   The second document is a treatment note, dated March 27, 2019, documenting Dr. Joglekar's treatment of Plaintiff for Systemic Lupus Erythematosus (Tr. 51-55). Plaintiff submitted these two documents to the Appeals Council in support of her request for

---

5 The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.   *See* Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); <u>Mitchum v. Saul</u>, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); <u>Samona v. Comm'r of Soc. Sec.</u>, No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under Fed. R. Civ. P. 59(e).   *See* <u>Moore v Berryhill</u>, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.

review of the ALJ's decision (Tr. 1-2, 50, 51-55).   The Appeals Council considered this new evidence but concluded that it "does not show a reasonable probability that it would change the outcome of the decision" (Tr. 2).   The Appeals Council indicated it denied Plaintiff's request for review because it found no reason under the rules to review the ALJ's decision (Tr. 1).

When, as here, the Appeals Council considers new evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner.   Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).   This approach makes sense because the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.   *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline, 96 F.3d at 148; Cotton, 2 F.3d at 695-696.   Therefore, the Court will not consider Dr. Joglekar's letter dated March 14, 2019 and treatment note dated March 27, 2019 (Tr. 50, 51-55) in addressing Plaintiff's challenge to the ALJ's determination that she does not meet Listing 14.02.

Defendant suggests that Plaintiff may be relying on Dr. Joglekar's letter dated March 14, 2019 and treatment note dated March 27, 2019 (Tr. 50, 51-55) to justify a prejudgment remand under sentence six of 42 U.S.C. § 405(g).   But Plaintiff has not expressly made such a request (*see* DN 17-1 PageID # 3609-10).   Moreover, it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be

9

waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   For this reason, if Plaintiff intended to raise such a claim, it is deemed waived.

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. §§ 404.1525(c)(3), 416.25(c)(3).   An Administrative Law Judge will find that an impairment "*meets* the requirements of a listing when it satisfies all the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3) (emphasis in original); *see* Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).   An Administrative Law Judge will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. §§ 404.1526(a), 416.926(a).[6]

3.   Discussion

Listing 14.00 is entitled "Immune System Disorders."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00.   Autoimmune disorders (14.00D) is a category of immune system disorders addressed under this Listing.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00A.   "Autoimmune disorders are caused by dysfunctional immune responses directed against the body's own tissues, resulting in chronic, multisystem impairments that differ in clinical manifestations, course, and outcome."   20

---

6 Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. §§ 404.1526(a), 416.926(a).   "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."   Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

C.F.R. Pt. 404, Subpt. P, App. 1, 14.00A2.   The introductory paragraphs to Listing 14.02 read as follows:

> D. How do we document and evaluate the listed autoimmune disorders?
>
> 1. Systemic lupus erythematosus (14.02).
>
> a. General.   **Systemic lupus erythematosus** (SLE) is a chronic inflammatory disease that can affect any organ or body system.  It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss).  Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis).  Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.
>
> b. Documentation of SLE.  Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D1(a) and (b).

Listing 14.02 requires the following:

> 14.02 Systemic lupus erythematosus.  As described in 14.00D1. With:
>
> A. Involvement of two or more organs/body systems, with:
>
> 1. One of the organs/body systems involved to at least a moderate level of severity; and

11

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.02.

At step two, the ALJ found that Plaintiff's swelling in both feet and her autoimmune condition are severe medically determinable impairments (Tr. 14).   The ALJ noted that swelling in both feet has been variously described as inflammatory arthritis and the autoimmune condition has been variously described as systemic lupus erythematosus and connective tissue disorder (Id.) (citing Tr. 1836, 2772, 2970).   The ALJ explained that while he did not specifically name systemic lupus erythematosus or connective tissue disorder as impairments, he accounted for these conditions in the sequential evaluation process (Tr. 14-15).

At step three, the ALJ made the following findings:

As to swelling in both feet and autoimmune condition, these conditions, considered singly, in combination, and in combination with the claimant's other impairments, do not meet or equal listings 14.02, 14.06 or 14.09.   Here, the record does not reveal ankylosing spondylitis, other spondyloarthropathies, or, at the level of severity contemplated by the listings, "persistent inflammation or persistent deformity" or involvement of two or more organs/body systems or

12

at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss), as detailed in Finding Five (Exhibits 1F-54F).

Further, the record also does not reveal an "inability to ambulate effectively". For example, it is noted, some exams revealed walker use upon exam (Exhibits 6F/7; llF/4; 13F/4; 14F/4; 16F/4, 5; l 7F/4; 19F/4; 24F/8; 28F/2, 7, 13; 37F/3, 8, 13; 34F/4; 35F/6; 39F/12; 43F/3, 9, 20; 46F/3, 8, 13; 47F/6). However, the record only sporadically revealed decreased strength (Exhibit 6F/8; 16F/5; 21F/4; 22F/6; 30F/30; 31F/3; 34F/7; 40F/6) or decreased sensation (Exhibits SF/28; 20F/73; 21F/4; 22F/6; 29F/3; 31F/3; 34F/7). In fact, exams in the record, as detailed at length in Finding Five, otherwise failed to reveal any noted assistive device use upon exam or any noted motor, strength, or sensory deficits (Exhibits 1F-54F).

Moreover, the record does not reveal an "inability to perform fine and gross movements effectively". For example, despite symptoms, the claimant performs personal care activities, prepares meals, and shops in stores (Exhibit 3E; Hearing Testimony).

In addition, the record also does not reveal, for the reasons set forth in "paragraph B" analysis in Finding Three, a "marked" level of limitation with respect to activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Therefore, in light of the above, neither listing 14.02 nor 14.06 nor 14.09 are met or equaled.

(Tr. 18-19).

At step four, in connection with the RFC determination in Finding No. 5, the ALJ further substantiated the above determinations with more detailed discussions of the examination records, objective testing results, and medical opinions in the record (Tr. 21-27). Contrary to Plaintiff's contention, the ALJ's determination--Plaintiff's lupus does not meet Listing 14.02—is supported by substantial evidence in the record and comports with applicable law.

13

Finding No. 5

1.   Arguments of the Parties

Plaintiff challenges the RFC determination in Finding No. 5 by making three claims (DN 17-1 PageID # 3605-15).   First, Plaintiff argues the ALJ's failure to give "controlling weight" to the opinion of her treating neurologist, Dr. Michael Mayron, or to articulate valid reasons to discredit the opinion is "clear error" and requires reversal, or in the least a remand (Id. at PageID # 3605-09) (citing 20 C.F.R. § 404.1527; Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 530 (6th Cir. 1996)).   Next, Plaintiff asserts that the ALJ erred in failing to accept her testimony as fully credible or in failing to state sufficient reasons for doing so (Id. at PageID # 3612-14).   Additionally, Plaintiff contends there was not substantial evidence to support the ALJ's RFC determination that her condition would have allowed her to perform light work (Id. at PageID # 3614-15).

Defendant contends that substantial evidence in the record supports the ALJ's RFC determination (DN 22 PageID # 3638-46).   Defendant points out that Plaintiff's first argument relies on the wrong regulation and that under the appropriate regulation the ALJ appropriately found the 2018 opinion of Dr. Mayron less persuasive because the limitations were unsupported by the doctor's own treatment records and at odds with other examination findings in the record (Id. at PageID # 3639-44) (citing Tr. 25-26, 3435-36 and 20 C.F.R. § 404.1520c).   Next, Defendant indicates that the ALJ appropriately assessed Plaintiff's subjective statements regarding pain and other limitations imposed by her impairments (Id. at PageID # 3644-46).   Defendant

14

contends that substantial evidence supports the ALJ's RFC determination that limited Plaintiff to a range of light work with certain exertional, postural, and environmental limitations (Id. at PageID # 3645-46).

2.  Applicable Law

Plaintiff's challenge to the RFC determination includes an argument that the ALJ's failure to give "controlling weight" to the opinion of her treating neurologist, Dr. Michael Mayron, or to articulate valid reasons to discredit the opinion is "clear error" and requires reversal, or in the least a remand (DN 17-1 PageID # 3605-09) (citing 20 C.F.R. § 404.1527; Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 530 (6th Cir. 1996).   But Plaintiff's argument relies on the wrong standard of review.   Under the applicable standard of review, the Court is limited to determining whether the findings in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).

Additionally, Plaintiff mistakenly relies on the wrong rules in her challenge to the ALJ's evaluation of Dr. Mayron's medical opinion (Id.) (citing 20 C.F.R. § 404.1527; Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 530 (6th Cir. 1996)).   As Plaintiff filed her applications after March 27, 2017 (Tr. 11, 261-64, 265-74), the new rules in 20 C.F.R. §§ 404.1520c and 416.920c apply to the ALJ's evaluation of the medical opinions in the record.

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical opinions, prior administrative medical findings, and all other evidence in the case record.

15

20 C.F.R. §§ 404.1520c, 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[7] in the record, even if it comes from a treating medical source.   20 C.F.R. §§ 404.1520c(a), 416.920c(a).[8]   Instead, Administrative Law Judges now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulations.   20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[9]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.

---

7 At the initial and reconsideration levels, State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

8 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

9 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. §§ 404.1520c(c)(3)(i)-(v); 416.920c(c)(3)(i)-(v).

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p ("SSR 16-3p").   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p.

In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

17

3.   Discussion

The ALJ's RFC analysis includes an accurate summary of Plaintiff's claims concerning her impairments (physical and mental), the results of examinations performed, the results of objective testing (e.g., blood tests, MRIs, x-rays, EMG), the type and effectiveness of treatment received, the effectiveness and side effects of prescribed medications, the statement of Plaintiff's friend (Schmia Sabrina Parm), and the medical opinions in the record (Tr. 14-18, 20-27).   The ALJ indicated, after carefully considering the evidence in the record, that he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 20).   Thus, the ALJ concluded that the objective medical evidence did not confirm the severity of the alleged pain and other symptoms arising from Plaintiff's physical and mental impairments.   The ALJ explained as follows:

> Simply stated, despite obesity, symptoms, and the waxing and waning of symptoms, the record reveals a conservative course of treatment with only sporadic emergency room presentations and generally normal, with only minimal, findings.   Further, the extent of the claimant's alleged limitations is not entirely consistent with the same.
>
> In addition, the claimant's actions and admissions are also not entirely consistent with the extent of her alleged limitations.   For example, the claimant reported using a walker, having to elevate her legs during the day, requiring help with getting into/out of the shower, requiring help with undergarment fastening on her back, sitting down to shave, and no longer being able to camp, swim, walk in the part, or travel.   However, she also reported performing personal care activities, preparing simple meals, doing chores (albeit with help and not as much as she used to do), watching television, reading, listening to music, playing board games, driving, purchasing items via telephone, shopping in stores (albeit with the use of a riding cart), and attending medical and physical therapy appointments. (Exhibits 3E; 4E; 7E; Hearing Testimony).   Simply

18

stated, the claimant's actions and admissions reveal that she is not as limited as she alleged from a physical (or mental health) standpoint.

Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the assessed residual functional capacity. Further, this evidence, and the evidence set forth in Finding Three, does not support the assessment of different or additional limitations. Additionally, the undersigned accounted for the claimant's obesity, the waxing and waning of symptoms, subjective allegations (including, but limited to, pain, swelling, and stroke), assistive device use (including, but not limited to, a walker), non-severe impairments, and alleged medication side effects when making this assessment.

(Tr. 24). The above analysis shows that the ALJ appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged by Plaintiff. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

For example, the ALJ considered Plaintiff's level of daily activity as a factor in determining the extent to which pain and other symptoms are of disabling severity. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 16-3p; Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also noted inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p. Another factor the ALJ considered was the medications used to alleviate Plaintiff's alleged pain and other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

19

The undersigned concludes the above-mentioned findings regarding Plaintiff's subjective statements are supported by substantial evidence and fully comport with applicable law.

Next, Plaintiff takes issue with the ALJ's assessment of Dr. Myron's medical opinion. Much of Plaintiff's argument is easily disposed of because, as explained above, she relies on the wrong regulations and related case law in support of her position.   The ALJ's assessment of the medical opinion at issue reads as follows:

> Further, Dr. Michael Mayron, a treating neurologist, opined via letter dated December 7, 2018: The claimant "suffers from multiple functional limitations.   She is limited in her ability to sit, stand or walk for long periods of time.   She is unable to stand or walk without the use of an assistive device.   While she is seated, her legs needs to be elevated waist level . . .   She is unable to engage in any of these functional activities longer than thirty (30) minutes at a time without lying down or resting . . .   She is limited in her ability to lift no more than ten (10) pounds . . .   Furthermore, her symptoms can be worse at times resulting in good and bad days.   As a result, she would likely miss work on a regular basis, at least once a week". (Exhibit 52F).
>
> The presentation of Dr. Mayron's above opinion, and the subsequent acknowledgment of the representative's participation in the preparation of that opinion (Exhibit 16E) render it less persuasive, and only to the extent the opinion is supported by any objective findings, the representative's altruistic intentions notwithstanding. Specifically, while the claimant generally having standing and walking limitations and generally requiring an assistive device for ambulation is generally consistent with the record, the extent of the limitations suggested by Dr. Mayron is not consistent with or supported by the record.   For example, Dr. Mayron's treatment records document exam findings of walker use (Exhibits 34F/4; 35F/6; 39F/12; 47F/6).   However, despite said walker use, the Mayron records documented only one-time exam findings of decreased lower extremity strength and sensation (Exhibit 34F/7), with exams in Dr. Mayron's own records otherwise revealing normal strength, normal sensation, normal motor function, normal reflexes, intact cranial nerves, and no noted atrophy, synovitis, edema, or swelling. (Exhibits 34F; 35F; 39F; 47F).   Simply stated, on the

20

> whole, Dr. Mayron's opinion is less persuasive than are the opinions
> of the State agency medical consultants.

(Tr. 26).   Contrary to Plaintiff's assertion, the ALJ's assessment of Dr. Mayron's opinion comports with applicable law, set forth at 20 C.F.R. §§ 404.1520c and 416.920c, and is supported by substantial evidence in the record.

Finally, Plaintiff asserts that substantial evidence does not support the RFC determination that she can perform a range of light work.   There is no merit to Plaintiff's contention.   As explained above, the ALJ substantiated his RFC determination with a thorough review of the medical and nonmedical evidence in the record, including Plaintiff's subjective statements, pertaining to her physical and mental conditions.   Further, for the foregoing reasons, substantial evidence in the record supports the ALJ assessment of Plaintiff's subjective statements and the ALJ's findings concerning the limitations imposed by Plaintiff's impairments.   Thus, the ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law.   This means that Plaintiff is not entitled to relief as to her challenges the ALJ's RFC determination set forth in Finding No. 5.

<u>Finding Nos. 10 and 11</u>

1.   Arguments of the Parties

Plaintiff argues that the testimony of the vocational expert does not provide substantial evidence to support these step five determinations by the ALJ (DN 17-1 PageID # 3602-05, 3614-15).   First, Plaintiff contends that the vocational expert's testimony is based on obsolete job descriptions from the Dictionary of Occupational Titles ("DOT") (<u>Id.</u> at PageID # 3603, 3605).   Next, the jobs identified by the vocational expert do not satisfy the "significant" number of positions requirement in 20 C.F.R. § 404.1566 because his testimony indicates approximately

13,000 inspectors equaling 260 regionally, 7,000 stone setters equaling 140 regionally, and 12,000 lamp shade assemblers equaling 240 regionally (Id. at PageID # 3603-05) (citing Cunningham v. Astrue, 360 F. App'x 606 (6th Cir. 2010)).   Additionally, the vocational expert responded to the ALJ's first hypothetical question by identifying jobs that were available at the sedentary, not light, level due to talk about a walking device (Id. at PageID # 3614-15) (citing Tr. 103).   Also, the vocational expert indicated there would be no work available to her if she needed to take unscheduled and unpredictable breaks to elevate her legs to waist level while seated (Id. at PageID # 3615) (citing Tr. 101-02).

Defendant responds by asserting that the vocational expert's testimony provides substantial evidence to support the challenged step five determinations (DN 22 PageID # 3646-57). Defendant contends that Plaintiff waived or forfeited her DOT obsolescence claim by failing to develop the record through cross-examination of the vocational expert (Id.).   Further, the vocational expert identified a significant number of jobs within the national economy (Id.).

2.   Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a), 416.920(a)(4)(v) and (g), 416.966(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the

Commissioner may rely on that Grid Rule to meet this burden.    20 C.F.R. §§ 404.1569, 416.969;

Grid Rule 200.00; <u>Born v. Sec'y of Health & Human Servs.</u>, 923 F.2d 1168, 1174 (6th Cir. 1990);

<u>Moon</u>, 923 F.2d at 1181.    However, if a claimant's age, education, previous work experience,

and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the

Commissioner is limited to using the Grid Rule as a framework in the decision-making process

and must make a non-guideline determination based on the testimony of a vocational expert.    20

C.F.R. §§ 404.1566(e), 416.966(e); <u>Born</u>, 923 F.2d at 1174; <u>Varley v. Sec'y of Health & Human

Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987); <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524,

531, 535 (6th Cir. 1981), <em>cert. denied</em>, 461 U.S. 957 (1983).    For example, if the claimant suffers

from an exertional and a non-exertional impairment then the Grids may be used only as a

framework to provide guidance for decision making.    20 C.F.R. §§ 404.1569a(d) and

416.969a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); <u>Abbot v. Sullivan</u>,

905 F.2d 918, 926-927 (6th Cir. 1990); <u>Cole v. Sec'y of Health & Human Servs.</u>, 820 F.2d 768,

771 (6th Cir. 1987); <u>Kirk</u>, 667 F.2d at 528-529.

    3.  Discussion

    During the administrative hearing, the ALJ posed a hypothetical question to the vocational

expert that accurately conveyed the limitations in the RFC determination (<em>compare</em> Tr. 23 <em>and</em>

Tr. 100-01).   In response, the vocational expert testified that the hypothetical individual could

work as: a lampshade assembler, DOT No. 739.684-094, sedentary, with 12,000 in the national

economy; dowel inspector, DOT No. 669.687-014, sedentary, with 13,000 in the national

economy; and stone setter, DOT No. 735.687-034, sedentary, with 7,000 in the national economy

(Tr. 101).   The ALJ's second hypothetical question included everything in the first hypothetical

plus the requirement to elevate lower legs to waist level while seated (Id.).   The vocational expert testified the additional limitation would preclude all work (Tr. 101-02).   During cross-examination, the vocational expert confirmed that additional limitations like the need to take additional breaks throughout the eight-hour workday to lie down or recline and missing work two or more days a month would also preclude all work (Tr. 102).   The vocational expert acknowledged that if he provided an opinion that conflicted with information in the DOT, he would need to identify the conflict and provide the basis of his opinion (Tr. 99).

The ALJ relied on the vocational expert's testimony to find—considering Plaintiff's age, education, work experience, and RFC—there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 28-30, Finding No. 10).   The ALJ relied on this finding to conclude that Plaintiff had not been under a disability from March 11, 2017, through the date of the decision (Tr. 30, Finding No. 11).

Plaintiff attacks these findings by asserting that the vocational expert's testimony is based on obsolete job descriptions from the DOT.   The circumstances here are similar to those in a recently issued unpublished Sixth Circuit order.   *See* O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 316-18 (6th Cir. 2020).   In O'Neal, as here, the ALJ satisfied the responsibility under SSR 00-4p by ensuring that the vocational expert's testimony did not conflict with the information in the DOT (Tr. 99).   *See* id. at 317-18.   Having fulfilled this requirement, the ALJ in O'Neal, and here, could rely on the vocational expert's testimony in making the step five findings.   *See* id.   Because nothing in SSR 00-4p imposes an affirmative duty on the ALJ to independently determine whether the vocational expert's testimony is correct, the Sixth Circuit in O'Neal concluded that the claimant must develop any potential challenges to the vocational

24

expert's testimony through cross-examination during the hearing.   Id. at 318; Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006).   In O'Neal, despite having the opportunity to do so, the claimant failed to cross-examine the vocational expert about the purported obsolescence of the DOT job description at issue.   799 F. App'x at 318.   Similarly, here, Plaintiff did not inquire about the obsolescence of the three DOT job descriptions when he cross-examined the vocational expert (Tr. 102).   Like the Sixth Circuit in O'Neal, this Court cannot know whether cross-examination of the vocational expert would have suggested that the three DOT job descriptions are in fact obsolete.   Id.   In O'Neal, the Sixth Circuit held "[b]ecause the DOT continues to be recognized as a source of reliable information and O'Neal did not cross-examine the vocational expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that O'Neal was able to perform work that existed in significant numbers in the national economy."   O'Neal, 799 F. App'x at 318. Considering the substantially similar circumstances and the Sixth Circuit's reasoning in O'Neal, this Court holds that Plaintiff forfeited her claim by failing to develop it through cross-examination, and the vocational expert's testimony constitutes substantial evidence to support Finding Nos. 10 and 11.

Alternatively, Plaintiff seeks to undermine the vocational expert's testimony by asserting the identified jobs do not satisfy the "significant" number of jobs requirement in 20 C.F.R. §§ 404.1566, 416.966.   However, Plaintiff merely speculates about what the numbers of jobs might be in the regional economy.   Essentially, Plaintiff is asking the Court to review the ALJ's decision based on questionable information that was not in the administrative record when the ALJ rendered his decision.   But this is contra to the applicable law which limits review to the ALJ's

decision and the evidence in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).   Moreover, the Sixth Circuit's holding in O'Neal, 799 F. App'x at 316-18, appears equally applicable to this situation because Plaintiff, despite having the opportunity to do so, did not develop the record through cross-examination of the vocational expert.   Notwithstanding, the vocational expert identified a significant number of jobs in the national economy that Plaintiff could perform (Tr. 101), which is the legal standard that the Commissioner must meet.   *See* 20 C.F.R. § 404.1566; Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016) (citations omitted) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'"); McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988).   For these reasons, the Court holds that the vocational expert's testimony constitutes substantial evidence to support Finding Nos. 10 and 11.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the

ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

August 10, 2021

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:         Counsel

27